IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DENNIS P. GLYNN       *
      Plaintiff,           *

                    *       Civil No. JFM 07–1660
       v.                  *
                    *

EDO CORPORATION, *et al.*       *
      Defendants.       *
                    *

                   *****

**MEMORANDUM**

Plaintiff Dennis Glynn ("Glynn") is a former employee of defendant Impact Science and

Technology, Incorporated ("IST"), a company acquired in September 2006 by defendant EDO

Corporation ("EDO").  Plaintiff's suit against IST and EDO alleges retaliation in violation of the

False Claims Act, 31 U.S.C. § 3730 *et seq.*, and wrongful termination.[1]  (Dkt. 85.)  IST filed

counterclaims against Glynn and cross-claims against Saltwhistle Technology, LLC

("Saltwhistle"),[2] a single member LLC owned and operated by Glynn, asserting numerous state

law causes of action arising from Glynn's alleged actions during and after his employment with

IST, including breach of contract, breach of fiduciary duty, misappropriation of trade secrets,

conversion, defamation, tortious interference with advantageous relations, unjust enrichment,

and civil conspiracy.  (IST's 2d Am. Countercls. Against Glynn and Cross-cls. Against

Saltwhistle ["Second Am. Countercls. and Cross-cls."]), Dkt. 145.)  IST filed similar "cross-

---

[1]I previously dismissed two defendants, Michael Caprario and Dean Puzzo, for lack of personal jurisdiction.  *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 605 (D. Md. 2008).

[2]This "cross-claim" should have been designated as a counterclaim.  As discussed further in footnote three, cross-claims are filed against co-parties, not against adverse parties.  IST added Saltwhistle as a party when it brought its counterclaim against Glynn.  I will treat this pleading as thought it were correctly designated.

claims"[3] against James D. Martin ("Martin"), a former IST employee who worked with Glynn,

CadQal Development, Inc. ("CadQal"), a software corporation of which Martin is President, and

Foster-Miller, Inc. ("FMI"), a company with a business relationship with Glynn.  (IST's Cross-

cls. Against Martin, CadQal, and FMI ["Cross-cls."], Dkt. 116.)

Now pending before me are Glynn and Saltwhistle's Motion to Dismiss Counts V, IX,

and XI of the counterclaims and cross-claims (Dkt. 190) and Martin and CadQal's Motion to

Dismiss all cross-claims (Dkt. 197).  For the reasons set forth below, Glynn and Saltwhistle's

motion is granted in part and denied in part.  Martin and CadQal's motion is granted.

## I.

A.     Glynn and Saltwhistle

IST is a corporation that provides intelligence and information warfare technologies and

products to the United States government and armed forces.  Glynn began working for IST in

March 2004, after IST acquired Dedicated Electronics, Inc. ("DEI"), a privately held company

co-owned by Glynn and three others.[4]  (Second Am. Countercls. and Cross-cls. ¶¶ 9, 12.)  The

---

[3]IST also improperly styled the claims against Martin and CadQal as "cross-claims."
Martin and CadQal were not previously parties in this litigation and were not IST's co-parties.  I
will treat this pleading as if it was correctly designated.  However, I note that federal law is clear
that "a counterclaim or cross-claim may not be directed solely against persons who are not
already parties to the original action, but must involve at least one existing party."  6 Charles
Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1435, at 271 (3d ed. 2004).
IST failed to involve an existing party in its claims against Martin and CadQal.  It appears that
IST actually intended to join Martin and CadQal to IST's counterclaim against Glynn.  In any
event, counterclaims and crossclaims must satisfy Rules 19 or 20, which govern, respectively,
compulsory and permissive joinder.  *See* Fed. R. Civ. Proc. 13(h) ("Rules 19 and 20 govern the
addition of a person as a party to a counterclaim or crossclaim.").  Given that I dismiss Martin
and CadQal on personal jurisdiction grounds, I need not address this issue.

[4]The facts alleged in the complaint are viewed in the light most favorable to IST.
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  The

purchase of DEI was made pursuant to an Asset Purchase Agreement, which transferred to IST

all ownership, title, and interest in all of DEI's assets, intellectual property, tangible property,

and intangible property.  (*Id.* ¶¶ 9, 11.)  As part of Glynn's Employment Agreement, Glynn

executed a non-disclosure and confidentiality agreement and restrictive covenants.  (*Id.* ¶¶ 13-

15.)  He also executed acknowledgment forms on February 5, 2004, and January 10, 2006,

confirming that he had received, reviewed, and was informed of IST's policies and procedures.

(*Id.* ¶ 18.)

Glynn was employed by IST as a Principal Engineer and Senior Principal Engineer until

IST terminated his employment on December 14, 2006.  (*Id.* ¶¶ 18, 29.)  His primary

responsibility was serving as an Engineering Manager for the Microwave and Radio Frequency

Integrated Assemblies Group (the "Microwave Group"), a capacity in which he worked on and

oversaw the production of various IST modules and components that are designed to counter

Improvised Explosive Devices ("IEDs").  (*Id.* ¶ 20.)

IST alleges that at times, and increasingly beginning in Spring 2006, Glynn neglected

and ignored his supervisory duties, made false statements about IST and its management and

employees, including statements that IST's design decisions and products were flawed, to

external vendors, IST employees, customers, and other members of the government contractor

business community, and engaged in improper activities on IST time.  IST alleges that Glynn

appropriated, misused, marketed, sold, disclosed, and failed to return trade secrets, confidential

information, and confidential communications, improperly competed with IST, and solicited

IST's vendors, customers, and current employees.  IST further alleges that Glynn took tangible

---

background facts related to Glynn's claim against IST and Saltwhistle are set forth in detail in
my earlier opinion.  *See Glynn*, 536 F. Supp. 2d at 599-601.

items and property from IST and enlisted other employees to take items on his behalf.  (*Id.* ¶¶ 87, 89.)  Glynn is now allegedly designing and developing modules based on proprietary information acquired from IST.  (*Id.* ¶¶ 35, 39-41.)  IST alleges that the company formed by Glynn after his termination, Saltwhistle, is engaging in unlawful competition against IST.  (*Id.* ¶ 33(b)-(c).)

B.     Martin and CadQal

James D. Martin was employed at IST as a Senior Microwave Engineer from February 5, 2005 through April 9, 2008.  (Cross-cls. ¶¶ 40, 45.)  Martin worked at IST's headquarters in New Hampshire and was supervised by Glynn until October 7, 2006.  (*Id.* ¶¶ 42, 44.)  IST alleges that Glynn, Saltwhistle, FMI, Martin, and CadQal conspired to misappropriate, defraud, and convert IST's proprietary and confidential information and trade secrets, unfairly compete with IST, and interfere with IST's business relationships.  (*Id.* ¶¶ 121-22.)  IST asserts that Glynn enlisted Martin to assist him in violating IST company policies and stealing confidential information.  IST also asserts that Martin performed work for competitors while employed at IST and stole IST's proprietary and trade secret information.  (*Id.* ¶¶ 52-63.)

On July 1, 2008, IST filed a pleading styled as a "cross-claim" against Martin, CadQal, and FMI.  (Dkt. 116.)  Summons were issued by the Clerk of Court on July 7, 2008, for service upon Martin and CadQal's New Hampshire counsel.  (Dkt. 128, 129.)

On July 28, 2008, Martin, proceeding *pro se*, traveled to the District Court in Baltimore, Maryland, to file a "Consented To Motion by James D. Martin and CadQal Development, Inc. To Extend Time To File A Motion Challenging Jurisdiction and/or Motion To Dismiss Impact Science & Technology's Counterclaim by James D. Martin, pro se."  (Dkt. 161.)  The motion was granted.  (Dkt. 173.)  On the same day, IST requested that the Clerk's Office reissue blank

summons for Martin and CadQal, stating that "[t]his request is being made because undersigned counsel is aware that Martin is present within the court's jurisdiction and would like to serve him today." (Request to Reissue Summons for James D. Martin and CadQal Development, Inc. 2, Dkt. 162.) July 28, 2008 was also the second day of a preliminary injunction hearing in the case brought by Glynn against EDO and IST. On that day, counsel for IST observed Martin near the courthouse as well as in the hallway outside of the courtroom conferring with Glynn and Glynn's counsel. (IST Opp'n Ex. C. ¶ 8, Ex. D ¶¶ 5-6.) Martin and Glynn were then observed walking from the courthouse towards the Holiday Inn Inner Harbor, and Martin was served in the hotel lobby near the reception desk. (IST Opp'n Ex. B ¶¶ 5-6; Dkt. 166 & 167.)

On August 8, 2008, attorney Jonathan C. Puth entered an appearance as counsel for Martin and CadQal. (Dkt. 182.) Puth filed a motion to extend the responsive pleading deadline until August 25, 2008. (Dkt. 186.) The motion was granted, and the first responsive pleading, a motion to dismiss, was filed by Martin and CadQal on August 25, 2008. The motion challenges personal jurisdiction, subject matter jurisdiction, and failure to state a claim upon which relief can be granted.

## II.

Glynn and Saltwhistle move to dismiss IST's claims for conversion (Fifth Counterclaim), unjust enrichment (Ninth Counterclaim), and civil conspiracy (Eleventh Counterclaim), on the grounds that these common law claims are preempted by the New Hampshire Uniform Trade Secrets Act ("NHUTSA"), N.H. Rev. Stat. Ann. § 350-B *et seq*.[5] The NHUTSA is New

---

[5]Under Federal Rule of Civil Procedure 12(b)(6), a cross-claim or counterclaim defendant may move to dismiss a cross-claim or counterclaim for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

Hampshire's codification of the Uniform Trade Secrets Act.  *Mortgage Specialists, Inc. v. Davey*, 904 A.2d 652, 662 (N.H. 2006).  Its preemption provision states that the NHUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."  N.H. Rev. Stat. Ann. § 350-B:7.  The NHUTSA exempts from preemption contractual remedies and criminal remedies, whether or not they are based upon misappropriation of a trade secret, and other civil remedies that are not based upon misappropriation of a trade secret.  *Id.*  The New Hampshire Supreme Court has held that the NHUTSA "preempts claims that are based upon the unauthorized use of information, regardless of whether that information meets the statutory definition of a trade secret."  *Mortgage Specialists*, 904 A.2d at 664.

       In determining whether a claim is "based upon the unauthorized use of information" such that it is preempted by the NHUTSA, the New Hampshire Supreme Court has concluded that the court "must examine the facts alleged in support of each claim to determine the extent to which the claim is based upon the misappropriation of trade secrets or other information."  *Id.* at 666.  Not all claims that are factually related to the misappropriation of information are preempted.  *Id.* at 665 ("'It is neither necessary nor prudent to preclude all common law claims that are connected with the misappropriation of what a plaintiff claims are trade secrets.'") (*quoting Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996)).  Instead, looking to the

---

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.  A claim is facially plausible when the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

facts alleged in support of the claim, "the claim is preempted when it is 'based solely on, or to the extent [that it is] based on, the allegations or the factual showings of unauthorized use of . . . information or misappropriation of a trade secret.'"  *Id.* (*quoting Burbank Grease Servs., LLC v. Sokolowski*, 693 N.W.2d 89, 100 n.12 (Wis. Ct. App. 2005), *rev'd in part*, 717 N.W.2d 781, 788-94 (Wis. 2006)) (alteration and omission in original).  If the "elements of the claim require some allegation or factual showing in addition to that which forms the basis for a claim of misappropriation of a trade secret," the claim is not preempted.  *Id.*

In *Mortgage Specialists*, the court found that the plaintiff's claim for conversion was preempted because the claim was based solely on allegations that the defendants took the plaintiff's customer information.  *Id.* at 666.  Similarly, the plaintiff's claim for breach of fiduciary duty was based solely on factual allegations that the defendants took and used plaintiff's customer information, and therefore it was also preempted.  *Id.* at 667.  However, the court found that the plaintiff's claims for tortious interference with advantageous relations and violation of the New Hampshire Consumer Protection Act ("CPA") were not preempted, as they were not based solely on the defendants' alleged use of the plaintiff's customer information.  *Id.* at 666-67.  On the tortious interference claim, the plaintiff alleged that the defendants intentionally contacted the plaintiff's customers and persuaded them to do business with the defendants, told the plaintiff's customers that the plaintiff was not properly licensed, and solicited the plaintiff's employees.  *Id.* at 667.  Likewise, the plaintiff's claim that the defendants were liable under the CPA was supported by an allegation that a defendant informed the plaintiff's customers that plaintiff was not properly licensed.  *Id.*  Therefore, the court concluded that the claims were not preempted "to the extent that the [tortious interference and CPA claim were] supported by more than the mere misuse of [the plaintiff's] customer information."  *Id.*

7

A.      Fifth Counterclaim:  Conversion

It is clear that under *Mortgage Specialists*, IST's conversion claims based on "proprietary

documents, employee information, technology design and schematics, contact lists, vendor and

pricing information, and other trade secrets and non-trade secret proprietary and confidential

information" are based on the misappropriation of IST's information.  (Second Am. Countercls.

and Cross-cls. ¶ 87.)[6]  Therefore, these claims, including claims based on allegations that Glynn

took a box containing IST's engineering schematics, drawings, and designs (*id.* ¶¶ 30-31), are

preempted by the NHUTSA.[7]  However, the claim that Glynn "took tangible items and property

from IST" (*id.* ¶ 89) – such as, for example, a chair or desk – is not preempted because it is not

---

[6]IST's reliance on *Powell Products*, 948 F. Supp. at 1475, is misplaced.  The *Powell Products* court concluded that a claim for conversion under Colorado law seeking recovery of mechanical drawings and blueprints was not preempted by the UTSA because these items were not trade secrets.  *Id.* ("Because plaintiff's claim also seeks recovery of the physical items stolen, including blueprints and drawings, which would not be the subject of a misappropriation claim under the UTSA, plaintiff's conversion claim is not entirely preempted.").  Unlike Colorado law, New Hampshire law preempts claims "based upon the unauthorized use of information, *regardless* of whether that information meets the statutory definition of a trade secret." *Mortgage Specialists*, 904 A.2d at 664 (emphasis added).  The information in question, or the physical items containing the information, need not necessarily be a trade secret.

[7]Glynn and Saltwhistle argued in their first partial motion to dismiss that the conversion claim fails because it alleges that Glynn only took copies of the documents, not the originals. (Glynn & Saltwhistle's Mem. of Points & Auths. in Supp. of Partial Mot. to Dismiss IST's Am. Countercls. 5-7.)  As any claims based on the taking of confidential documents are preempted by the NHUTSA, I need not address this argument.  However, I note that the documents here are intended to be confidential and derive their value from that confidentiality.  Therefore, they can likely be converted merely by their duplication and retention.  *See Pearson v. Dodd*, 410 F.2d 701, 707-08 (D.C. Cir. 1969) ("It has long been recognized that documents often have value above and beyond that springing from their physical possession.  They may embody information or ideas whose economic value depends in part or in whole upon being kept secret. . . .  Where information is gathered and arranged at some cost and sold as a commodity on the market, it is properly protected as property.  Where ideas are formulated with labor and inventive genius, as in the case of literary works or scientific researches, they are protected.") (internal footnotes omitted).

8

based on unauthorized use of information.

IST makes the novel argument that Glynn converted IST's intangible property interest in its employees' time by spending IST work hours performing work for IST's competitors. IST provides no support for this proposition, stating only that "[e]quity and common sense support a cause of action," and noting that other courts have determined that theft of intangible property can support a cause of action for conversion. (IST's Opp'n to Glynn and Saltwhistle's Mot. to Dismiss IST's 5th, 9th, and 11th Countercls. 8.) This claim fails because employee time cannot be the object of conversion. Under New Hampshire law, conversion "is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Muzzy v. Rockingham County Trust Co.*, 309 A.2d 893, 894 (N.H. 1973) (*citing* Restatement (Second) of Torts § 222(A) (1965)). IST stretches the concept of conversion too far when it asserts that an employee's conduct on company time is in the nature of a property or right which may be the subject of conversion.

IST's counterclaim for conversion is therefore dismissed insofar as it relies on improper use of IST's information and IST's employee time. The counterclaim survives as to any claim for tangible items and property that is not based on improper use of information or trade secrets.

B.      Ninth Counterclaim: Unjust Enrichment

The equitable doctrine of unjust enrichment in New Hampshire common law "'is that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity.'" *Cohen v. Frank Developers, Inc.*, 389 A.2d 933, 937 (N.H. 1978) (*quoting Am. Univ. v. Forbes*, 183 A. 860, 862 (N.H. 1936)). "A plaintiff is entitled to restitution if he shows that there was

unjust enrichment either through wrongful acts or passive acceptance of a benefit that would be unconscionable to permit the defendant to retain." *R. Zoppo Co., Inc. v. City of Manchester*, 453 A.2d 1311, 1313 (N.H. 1982); *see also Petrie-Clemons v. Butterfield*, 441 A.2d 1167, 1172 (N.H. 1982) ("Unjust enrichment may exist when an individual receives a benefit as a result of his wrongful acts, or when he innocently receives a benefit and passively accepts it.").

Here, IST alleges that Glynn and Saltwhistle's wrongful acts, which allowed them to "gain a head start" in developing and producing products, resulted in benefits such as profits, earnings, patent royalties, and commissions. (Second Am. Countercls. and Cross-cls. ¶¶ 117-19.) Glynn and Saltwhistle argue that this claim is preempted by the NHUTSA because it "implicitly refers to IST's allegations that Glynn stole proprietary and confidential information that could assist him in developing products similar to those he worked on at IST." (Glynn & Saltwhistle's Mem. in Supp. of Mot. to Dismiss IST's 5th, 9th, and 11th Countercls. 2.) I disagree, as the claim for unjust enrichment is "premised on wrongdoing over and above" the misappropriation or misuse of IST's information. *Virtual Cloud Servs., Inc. v. CH2M Hill, Inc.*, No. 02-CV-01004, 2006 WL 446077, at *3 n.3 (D. Colo. Feb. 21, 2006) (unpublished) (finding that a claim for unjust enrichment was not preempted). IST alleges several wrongful acts not based solely on the use of IST's information which could have unjustly benefitted Glynn and Saltwhistle, including making disparaging and false statements about IST's products, soliciting IST employees, customers, and vendors, and usurping IST's business opportunities. This claim is therefore not preempted by the NHUTSA and the motion to dismiss this count is denied.

C.       Eleventh Counterclaim:  Civil Conspiracy

        "'A civil conspiracy is a combination of two or more persons by concerted action to

accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means.'" *Jay Edwards, Inc. v. Baker*, 534 A.2d 706, 709 (N.H. 1987) (*quoting* 15A C.J.S. Conspiracy § 1(1), at 596 (1967)).  Under New Hampshire law, the elements are: "(1) two or more persons (including corporations); (2) an object to be accomplished (i.e. an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an *agreement* on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Id.*  IST alleges that Glynn, Saltwhistle, FMI, Martin, and CadQal agreed and conspired to "misappropriate, defraud, and convert IST's proprietary and confidential information and trade secrets" and "unlawfully commit unfair competition and interference with IST's contractual and prospective business relationships." (Second Am. Countercls. and Cross-cls. ¶¶ 121-22.)

Glynn and Saltwhistle contend that  "the only facts that one could arguably ascertain as a basis for this count would sound in the misappropriation of information."  (Glynn & Saltwhistle's Mem. in Supp. of Mot. to Dismiss IST's 5th, 9th, and 11th Countercls. 3.)  As discussed above, a claim is not preempted by the NHUTSA "where the elements of the claim require some allegation or factual showing in addition to that which forms the basis for a claim of misappropriation of a trade secret."  904 A.2d at 665; *see also Powell Products*, 948 F. Supp. at 1480 (claim for civil conspiracy to misappropriate trade secrets was allowed to proceed to summary judgment on the merits); *cf. Corporate Express Office Prods., Inc. v. Brown*, No. 00-C-608-C, 2001 WL 34381111 (W.D. Wis. July 18, 2001) (finding that a civil conspiracy claim was not preempted by the Wisconsin UTSA "because the allegations of trade secret misappropriation alone do not constitute the underlying wrong").  Therefore, I will not dismiss the claim. However, I note that it may be that if the conspiracy claim is based only on joint conduct

involving the same underlying claims as the preempted conversion claim, the claim could be

preempted.  I need not decide that issue at this stage.  At this point, the motion to dismiss this

count is denied.

## III.

Martin and CadQal move to dismiss the "cross-claims" brought by IST for lack of

personal jurisdiction, subject matter jurisdiction, and supplemental jurisdiction.  Martin and

CadQal also move to dismiss the "cross-claims" on the merits and adopt the arguments made by

Glynn, Saltwhistle, and FMI in their motions to dismiss.  I will grant the motion on the basis of

lack of personal jurisdiction.

The plaintiff bears the burden of showing that this court has personal jurisdiction over

each defendant.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  Because I am ruling on

the basis of the motions papers alone, plaintiff need make only a *prima facie* showing of personal

jurisdiction.  *Id.*; *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390,

396 (4th Cir. 2003).  In deciding whether a plaintiff has met this burden, "the court must

construe all relevant pleading allegations in the light most favorable to the plaintiff, assume

credibility, and draw the most favorable inferences for the existence of jurisdiction."  *Combs*,

886 F.2d at 676.

The requirement of personal jurisdiction is grounded in the Due Process Clause and is

subject to waiver.  *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 413 (4th Cir. 2002).  Because IST's

lawsuit against Martin and CadQal does not arise out of their activities in Maryland, only general

jurisdiction is alleged.  General jurisdiction arises "from the defendant's general, more

persistent, but unrelated contacts with the State."  *ALS Scan, Inc. v. Digital Serv. Consultants,*

*Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).  The defendant's activities in Maryland "must have been 'continuous and systematic.'"  *Id.*  However, "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945).  Only when the "continuous corporate operations within a state [are] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction.  *Id.*

General jurisdiction may also arise from a defendant's acceptance of service while in Maryland.  *See* Md. Code Ann., Cts. & Jud. Proc. § 6-102(a) ("A court may exercise personal jurisdiction as to any cause of action over a person . . . served with process . . . in the State."); *see also Burnham v. Superior Court of California*, 495 U.S. 604, 619, 628 (1990) (plurality opinion) (exercise of personal jurisdiction based solely on in-state service is permissible under the Due Process clause); *In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 590 n.17 (D. Md. 2005) (noting that "acceptance of service in Maryland is enough for this court to exercise personal jurisdiction over the individual Defendants").  Under the immunity doctrine, "witnesses and parties attending a judicial proceeding outside the territorial jurisdiction of their residence are immune or exempt from service of civil process in another suit while in attendance at court in that jurisdiction."  *Celanese Corp. v. Duplan Corp.*, 502 F.2d 188, 189 (4th Cir. 1974).

A.      James D. Martin

Martin is a New Hampshire resident and President of CadQal, a New Hampshire corporation that he operates with his wife out of his home in New Hampshire.  Martin asserts that IST has failed to allege the requisite minimum contacts to establish general jurisdiction in

Maryland.

IST claims that a minimum contacts analysis need not be conducted because Martin was served with process while physically present in Maryland.  (IST's Opp'n to Martin and CadQal's Mot. to Dismiss 3.)  Martin responds that he was entitled to immunity from service of process because he was in Maryland for the purpose of filing a request for additional time to file a responsive pleading.  (Martin and CadQal's Reply in Supp. of Their Mot. to Dismiss ["Martin Reply"] 7-8.)  He states that he had not retained Maryland counsel at that point and could not file his motion electronically, thus it was necessary for him to file the motion in person in Maryland to avoid default.  (*Id.* 8.)  IST agrees that Martin had "travel[ed] to Maryland to file a request for an extension of time to file a response brief in *this* case."  (IST's Opp'n to Martin and CadQal's Mot. to Dismiss 8.)  Martin also posits that because he had already been served by IST through his New Hampshire counsel, the subsequent personal service in Maryland was ineffective.  (*Id.*)

IST counters that the immunity doctrine does not apply here because Martin entered the state to file a motion in the same suit in which service was made, whereas the doctrine only immunizes witnesses and parties appearing in the state in *another* suit.  (IST's Opp'n to Martin and CadQal's Mot. to Dismiss 7.)  *See* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1080, at 423 (3d ed. 2004) ("There is generally no immunity from service of process when the suit in which the immunity is sought is part of, or a continuation of, the suit for which the person claiming immunity is in the jurisdiction."); *N. Light Tech., Inc. v. N. Lights Club*, 236 F.3d 57, 62 (1st Cir. 2001) (noting that "the extension of the privilege has been limited by the majority of courts to cases in which the party or witness was participating in an *unrelated* litigation at the time that he was served with process in the forum state").

Under IST's reasoning, a defendant who appears in Maryland to challenge personal

jurisdiction is simultaneously subject to in-state service of process that renders the personal

jurisdiction challenge moot.[8]  The result of IST's theory is that a defendant cannot appear in the

state to challenge personal jurisdiction without also losing the ability to bring the very argument

the defendant entered the state to assert.[9]  The constitutional due process protections of

"minimum contacts" and "fair play and substantial justice" would be illusory, for as soon as the

defendant entered the state to assert these protections, the defendant would lose them by being

subject to in-state service of process.

The doctrine of waiver is instructive.  Federal law "is well settled that general appearance

by a defendant does not constitute a waiver of the defense of lack of jurisdiction over the

person."  *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st Cir. 1983); *see also*

*Djordjevich v. Bundesminister Finanzen, Germany*, 124 F.3d 1309, 1997 WL 530499, at *3

(D.C. Cir. 1997) (unpublished table op.) ("Although it is true that a defendant may waive

personal jurisdiction, merely appearing in court to contest its jurisdiction does not in itself

constitute a waiver."); *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871, 874

(3d Cir. 1943) ("Rule 12 permits a defendant to raise a jurisdictional defense even though his

voluntary appearance has already called into existence the potential power of the court to

adjudicate the merits of his controversy.").  The Fourth Circuit has concluded that "Rule 12(h)

---

[8]It is of no moment that Martin was in Maryland to file a motion for extension of time to file a responsive pleading rather than to file the responsive pleading itself.  For simplicity's sake, I analyze the issues as if Martin was entering Maryland to file the responsive pleading challenging personal jurisdiction.

[9]I note that Fed. R. Civ. P. 4(e)(2), which authorizes personal service of a defendant physically present within a judicial district of the United States, specifically exempts from service "a person whose waiver has been filed." Thus, it appears that at least under this federal provision, a defendant who has filed a waiver of service could enter the state to challenge personal jurisdiction without being subject to in-state service.

15

contemplates an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make personal jurisdiction objections at the time of their appearance." *Foster*, 278 F.3d at 414 (*citing Bethlehem Steel Corp. v. Devers*, 389 F.2d 44, 46 (4th Cir. 1968)). It follows that an implied waiver does *not* result when defendants make the personal jurisdiction objection at the time of their appearance. IST's theory would lead to the illogical result that by entering a jurisdiction to raise a jurisdictional defense, a defendant loses the jurisdictional defense if in-state process is served. I cannot accept IST's argument, and I conclude that the in-state personal service of Martin did not satisfy the due process protections afforded by the Constitution.[10]

Therefore, I must determine whether Martin had "continuous and systematic" contacts with Maryland sufficient to subject him to general jurisdiction.[11] IST attempts to meet its burden by discussing Martin's involvement in Glynn's lawsuit against IST. IST states that Martin has collaborated with Glynn to develop joint defenses and privileges, select witnesses, and identify evidence. IST further states that Martin has discussed the case with Glynn and Glynn's counsel and reviewed a draft of Glynn's complaint. (IST's Opp'n to Martin and CadQal's Mot. to

---

[10]Additionally, under Maryland law, a "nonresident who is within the State for the purpose of testifying in or prosecuting or defending an action may not be served with process." Md. Code Ann., Cts. & Jud. Proc. § 6-305(a). While I could locate no caselaw interpreting this provision, Martin's actions in Maryland could be considered "for the purpose of . . . defending an action," *id.*, if this immunity protects persons defending the same action as the action in which service of process is attempted.

[11]Although it declined to express a view on the issue, the Supreme Court has questioned whether this form of general jurisdiction can apply to individuals, rather than corporations. *Burnham v. Superior Court*, 495 U.S. 604, 610 n.1 (1990) ("It may be that whatever special rule exists permitting 'continuous and systematic' contacts to support jurisdiction with respect to matters unrelated to activity in the forum applies *only* to corporations . . . ." (citation omitted)). I assume for purposes of this opinion that it can.

Dismiss 8-11.)

IST also asserts that Martin's business activities within Maryland are sufficient to

establish general jurisdiction.[12]   Martin's only contacts with Maryland are as follows:

(1) Martin made one trip to Columbia, Maryland in November 2006 as an employee of

IST to visit an IST vendor for a design team meeting;

(2) Martin attended a business meeting in Maryland on July 1, 2008, held by an Arizona

client;

(3) Martin traveled to Maryland to file his *pro se* motion for an extension of time in this

case;

(4) Martin traveled to Maryland twice as a child to visit relatives.

(Martin and CadQal's Mem. in Supp. of Their Mot. to Dismiss 3; IST's Opp'n to Martin and

CadQal's Mot. to Dismiss 12.)

These contacts are not of such a continuous and substantial nature that Martin may be

sued in Maryland over any controversy.   Therefore, Martin's motion to dismiss all claims against

Martin for lack of personal jurisdiction is granted.

B.     CadQal

CadQal's contacts with Maryland are similarly insufficient.   On July 1, 2008, Martin

attended a business meeting held by a CadQal client, in which the client, a Massachusetts-based

---

[12]Curiously, IST cites to a portion of Maryland's long arm statute for the proposition that
jurisdiction is proper over Martin.   (*See* IST's Opp'n to Martin and CadQal's Mot. to Dismiss 12
(citing Md. Code Ann., Cts. & Jud. Proc § 6-103(b)(1)).)   However, the section of the statute
cited by IST only applies if the cause of action arises out of business or work conducted in the
state.   *See* Md. Code Ann., Cts. & Jud. Proc § 6-103(b)(1).   There is no allegation that IST's
cause of action against Martin arises from business transacted in Maryland.

company with an Arizona office, made a presentation to its own Maryland client.  (Martin and

CadQal's Mem. in Supp. of Their Mot. to Dismiss 3.)  CadQal has no real property in Maryland,

has no clients in Maryland, transacts no business in Maryland, performs no work or services in

Maryland, receives no revenue from Maryland, and is not licensed to do business in Maryland.

(*Id.*)  CadQal has no authority to solicit business, sell, or service its software product in any state

outside of New England.  (*Id.* at 4.)

   This limited contact is clearly insufficient to demonstrate general jurisdiction.  There is

no evidence of continuous and systematic contacts with Maryland that were "substantial and of

such a nature as to justify suit against [CadQal] on causes of action arising from dealings entirely

distinct from those activities."  *Int'l Shoe Co.*, 326 U.S. at 318.  CadQal's motion to dismiss

based on lack of personal jurisdiction is also granted.


   For the reasons stated above, the motion to dismiss filed by Glynn and Saltwhistle is

granted in part and denied in part.  The motion to dismiss filed by Martin and CadQal is granted.

A separate order implementing this ruling follows.



July 23, 2009                              ___/s/_____
                                           J. Frederick Motz
                                           United States District Judge