IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| **DENNIS P. GLYNN** | ) |
| Plaintiff and Counter-Claim Defendant, | ) |
| v. | ) Case No. 1:07-cv-01660-JFM |
| **IMPACT SCIENCE & TECHNOLOGY, INC.,** | ) |
| Defendant and Counter-Claimant / Cross-Claimant, | ) |
| v. | ) |
| **SALTWHISTLE TECHNOLOGY, LLC,** | ) |
| Cross-Claim Defendant, | ) |
| and | ) |
| **EDO CORPORATION,** | ) |
| Defendant. | ) |

**PLAINTIFF AND COUNTER-CLAIM DEFENDANT DENNIS P. GLYNN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS *SECOND* MOTION TO COMPEL DEFENDANT AND COUNTER-CLAIMANT/CROSS-CLAIMANT IMPACT SCIENCE & TECHNOLOGY INC.'S RESPONSES TO PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff and Counter-Claim Defendant Dennis P. Glynn ("Glynn" or "Plaintiff"), by and through counsel, serves this memorandum pursuant to Local Rule 104.8(a) in support of his motion for entry of an order to compel Defendant and Counter-Claimant/Cross-Claimant Impact Science & Technology, Inc. ("IST" or "Defendant") to provide more complete and sufficient responses to Glynn's Interrogatory No. 25 and Glynn's First Supplemental Requests for

Production of Documents, served on June 9, 2009. IST has failed to answer Glynn's Interrogatory No. 25 or produce any relevant and non-privileged documents responsive to Glynn's First Supplemental Requests Nos. 1 – 6.

## Requests and Objections

IST responded to Glynn's Interrogatory No. 25 as follows:

**INTERROGATORY NO. 25:** Identify with reasonable and sufficient particularity and distinguish from matter of general knowledge, each trade secret or element of 1ST or EDO confidential and proprietary information that you contend Glynn misused or misappropriated.

IST objected to Interrogatory No. 25 on that basis that "[i]In addition to its General Objections, IST objects to this interrogatory on the grounds that it exceeds the numerical limits on interrogatories. IST further objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, duplicative, seeks information not required under relevant Federal and Local rules, and seeks information that is protected by the attorney client privilege and work product doctrine. IST objects to Plaintiff's interrogatory to the extent that it seeks from IST information in the possession of EDO. IST also objects to the extent that information responsive to this request is in the possession of Glynn and/or Saltwhistle. Additionally, IST states that extensive information and documents responsive to this interrogatory have already been produced in discovery and/or filed in this action."

IST responded to Supplemental Requests Nos. 1 – 6 as follows:

**REQUEST NO. 1:** All documents and/or communications among IST employees regarding Glynn's job performance at IST, Glynn's interactions with other IST employees, any complaints made or concerns raised about Glynn, the basis or justification for IST's decision to take any adverse personnel action against Glynn, or any reference to Glynn. This request (1)

includes any documents transmitted or stored on computers connected to IST's Virtual Private Network (VPN) that Mr. Michael Caprario, Mr. Dean Puzzo, Mr. Scott Traurig, Ms. Theresa Puzzo and Mr. Lincoln accessed from their residences and any notebook or other handwritten documents on which Gloria Jacobson documented any matter concerning Glynn and (2) any emails sent or received by Theresa Puzzo, Gloria Jacobson, Dean Puzzo, Michael Caprario, Lewis Dokmo, Warren Murrin, Scott Traurig, John Joseph, Steven Neill, Lindsey Monahan, Michelle Russell Robert Green, Dan Rice, Lorraine Wolfram, Benjamin Hochberger James Houghton, Richard Salvin, Jim Cody, David Perry, Bill Lelanger, Bill Beiter, Mark Johnson, Colonel Grigsby, Colonel Baxter, Captain Kavanaugh, Mark Pettigrew, Phil Joseph, Joe Richards, Peter Tengstrand, Gail Watson, Steve Searles, or Bob Houvener.

IST objected to Request No. 1 on the basis that, "[i]n addition to its General Objections, IST and EDO object to this request on the grounds that it is unduly burdensome, impermissibly vague, overly broad, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IST and EDO further object to this request to the extent it seeks documents that are not in the possession or control of IST or EDO. Subject to and without waving such objections, IST states that it has previously produced all responsive, non-objectionable, nonprivileged documents in its possession or control."

**REQUEST NO. 2:** All documents and/or communications between, among or involving IST and DOD, or any agent or representative of DOD, including DOD contractors or consultants, regarding any model of the MMBJ (including the MMBJ, MMBJ-X; MMBJ-1A; MMBJ-1A ECP; MMBJ-2.1) concerning the reliability or performance of any model of the MMBJ, testing of the MMBJ, modifications to the MMBJ, and any deficiencies with the MMBJ or problems encountered in operating the MMBJ.

IST objected to this request on the basis that, "[i]n addition to their General Objections, IST and EDO object to this request on the grounds that it is unduly burdensome, impermissibly vague, overly broad, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. More specifically, IST and EDO object to this request on the grounds that Plaintiff is not entitled to discovery aimed at attempting to establish that IST or EDO violated any provision of the False Claims Act other than the anti-retaliation provision. Also, this request is objectionable because it seeks far-reaching and burdensome discovery concerning predecessor and successor models of the 1 A model of the MMBJ device (which is the only generation of the MMBJ device that is even arguably relevant to this matter), and information about components other than the Multi-Band Tunable Noise Source component that Plaintiff alleges compromised the performance under high temperatures of the MMBJ-IA device. IST and EDO further object to this request to the extent it seeks documents that are not in the possession or control of IST or EDO. Subject to and without waving such objections, IST states that it has previously produced all responsive, non-objectionable, non-privileged documents in its possession or control."

**REQUEST NO. 3:**  Portions or excerpts of the personnel files of Scott Traurig, John Joseph, Dean Puzzo, Gloria Jacobson, Lindsay Monahan, Michael Lincoln, James Martin, Peter Rienzo and Michael Caprario concerning any formal or informal disciplinary action taken against these employees, any investigations of these employees' conduct, any complaints made about these employees, any formal or informal counseling of these employees and any documents about alleged or actual violations of company policies by these employees.

IST objected to this request on the basis that "[i]n addition to their General Objections, IST and EDO object to this request on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Specifically, the request seeks irrelevant information about employees who were not similarly situated to Plaintiff in that they did not occupy a supervisory position, did not have the same supervisor as Plaintiff, occupied higher-level supervisory positions in which they were subject to different standards, occupied entirely different and unrelated positions, and/or did not engage in the same conduct as Plaintiff.  IST and EDO also object to this request on the grounds that it is harassing. Subject to and without waiving these objections, IST and EDO state that no responsive, non-objectionable, non-privileged documents exist."

**REQUEST NO. 4:**  All documents submitted to any United States Government agency, including the DOD Office of Inspector General and the Department of the Army Criminal Investigation Command, related to any informal or formal inquiry or investigation of concerns raised by Glynn or to any formal or informal inquiry or investigation concerning the accuracy of IST's bills or claims submitted to the United States Government, IST's compliance with the requirements of its contracts with DOD (including any DOD agency), or the reliability or performance of any model of the MMBJ.

IST objected to this request on the basis that "[i]n addition to their General Objections, IST and EDO object to this request on the grounds that it is unduly burdensome, impermissibly vague, overly broad, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. More specifically, IST and EDO object to this request because it is virtually unlimited in scope and seeks documents that have absolutely no bearing on Plaintiffs claims in this matter. Plaintiff is not entitled to discovery aimed at attempting to establish that IST or EDO violated any provision of the False Claims Act other than the anti-retaliation provision. Plaintiff also is not entitled to discovery concerning irrelevant contracts and billing inquiries between IST/EDO and the DOD that are unrelated to any matter in this litigation.  Moreover, this request is objectionable because it seeks far-reaching and

burdensome discovery concerning predecessor and successor models of the 1A model of the MMBJ device (which is the only generation of the MMBJ device that is even arguably relevant to this matter), and information about components other than the Multi-Band Tunable Noise Source component that Plaintiff alleges compromised the performance under high temperatures of the MMBJ-1A device. Additionally, IST and EDO object to the extent this request calls for documents that are protected from disclosure by the attorney-client privilege and/or work product doctrine. IST and EDO further object to this request to the extent it seeks documents that are not in the possession or control of IST or EDO. Subject to and without waving such objections, IST states that it has previously produced documents responsive to this request."

**REQUEST NO. 5:**  All DD250 Forms submitted by IST to the United States government for the period of January 1, 2003 through December 2006.

IST objected to this request on the basis that "[i]n addition to their General Objections, IST and EDO object to this request on the grounds that it is unduly burdensome, impermissibly vague, overly broad, and virtually unlimited in scope. IST and EDO further object to this request because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, Plaintiff improperly seeks far-reaching and burdensome discovery concerning unidentified devices, including devices entirely unrelated to this litigation and including predecessor and successor models of the 1A model of the MMBJ device (which is the only generation of the MMBJ device that is even arguably relevant to this matter), information about components other than the Multi-Band Tunable Noise Source component that Plaintiff alleges compromised the performance under high temperatures of the MMBJ -1A device, and information that is entirely irrelevant to this litigation."

**REQUEST NO. 6:**  All documents and/or communications between or involving Dean C. Puzzo, James (Jim) Cody, Michael Caprario, William Beitner, and Joseph Richards, IST's facility security officer, related to IST's bid for and work performed under IST's contract for the ARCM Lite Project or the development or production of any model of the MMBJ, including all Request for Visit (RFV) forms sent or received by Joseph Richards, IST's facility security officer, from May 2004 through December 2006 related to the ARCM Lite Project or the MMBJ program.

IST objects to this request on the basis that "[i]n addition to their General Objections, IST and EDO object to this request on the grounds that it is unduly burdensome, impermissibly vague, overly broad, not properly limited in time or scope, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. More specifically, IST and EDO object to this request on the grounds that Plaintiff is not entitled to seek far-reaching and burdensome discovery concerning predecessor and successor models of the 1A model of the MMBJ device (which is the only generation of the MMBJ device that is even arguably relevant to this matter), and information about components other than the Multi-Band Tunable Noise Source component that Plaintiff alleges compromised the performance under high temperatures of the MMBJ-IA device. This request is also objectionable and improper for the reasons stated above to the extent it seeks the specified information concerning the ARCM Lite Project. IST and EDO further object to this request to the extent it seeks documents that are not in the possession or control of IST or EDO. Subject to and without waving such objections, IST states that it has previously produced documents responsive to this request."

**Discussion**

I.   **IST Must Identify, With Specificity, the Trade Secret It Alleges Glynn Misappropriated.**

IST's objects to the Glynn's Interrogatory with the circular and baseless objection that Glynn's Interrogatory 25 seeks information already in the possession of Glynn or Saltwhistle. Essentially, IST is asking Glynn to defend against a claim blindly, armed only with the specious allegation that "he knows what he did." IST's argument that it need not identify the allegedly misappropriated trade secrets because Glynn possesses the allegedly misappropriated trade secrets fails because Glynn, as a counter-claim defendant, is entitled to know the bases for IST's charges against him. Glynn will not be able to "mount a defense until [Glynn] has some indication of the trade secrets allegedly misappropriated." *DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007) (requiring counter-claim plaintiff to identify with reasonable particularity trade secrets alleged counter-claim defendants misappropriated before permitting company discovery on whether employees were using trade secrets in their own competing business). Furthermore, IST must specify, with reasonable particularity, the trade secrets it alleges Glynn misappropriated in order to allow the parties and the Court to assess the relevance of further discovery and to "help the court to determine the outer permissible bounds of discovery." *Id.* at 680-81. IST cannot continue to evade specifying those trade secrets which it alleges Glynn misappropriated. The Court should compel IST to specify, with particularity, those trade secrets which it alleges Glynn misappropriated.

II.  **Evidence of Other IST Employees' Misconduct Is Directly Relevant to Glynn's Claims.**

IST refuses to produce documents responsive to a Supplemental Request for Production of Documents No. 3 – a request for portions or excerpts of personnel files of specific IST

employees evidencing disciplinary action, complaints, counseling or violations of company policy regarding those specific employees on the basis that they were not employed in the same role as Glynn and did not engage in the same conduct Glynn engaged in.  The requested documents, however, are directly relevant to disparate treatment.  In its Motion for Preliminary Injunction ("PI Motion"), IST argues that it terminated Glynn's employment, in part, because he created a hostile work environment at IST.  Specifically, IST argues that "[a]t times, and increasingly beginning in the Spring of 2006, Glynn neglected and intentionally ignored his supervisory duties and created a negative, hostile, and divisive work environment in which he demeaned and insulted his subordinates, disrespected and ignored his superiors, and made disparaging and false statements about IST and its management and employees."  PI Motion at 10 (citing Am. CC at ¶ 120).  IST argues further that "IST employees filed complaints with IST's human resources department about this conduct and other hostile conduct by Glynn."  *Id.*  (citing Am. CC at ¶ 122).      In sum, IST repeatedly alleges that it terminated Glynn's employment because he was difficult to work with and created a tense environment at IST.  Several depositions and declarations have revealed, however, that IST's accusations against Glynn are not accurate and that in fact employees who supervised Glynn and employees who were supervised by Glynn engaged in far more egregious conduct with respect to inappropriate interactions and inappropriate comments in the workplace.   Documents concerning complaints made against other employees for engaging in the type of inappropriate workplace communications of which Glynn is accused are probative of disparate treatment, *i.e.,* IST's failure to discipline employees who did not blow the whistle but made inappropriate comments in the workplace, such as Michael Caprario stating that he would mop the floor with Jim Martin's face , will help demonstrate that  Glynn was subjected to heightened scrutiny and

disparate treatment.  Glynn is entitled to take discovery on these issues to defend himself against IST's claims and defenses.

> **III.   IST's Violations of the False Claims Act Are Directly Relevant to Glynn's Retaliation Claim.**

IST objects to Supplement Document Request Nos. 2 and 4 with the circular objection that "Plaintiff is not entitled to discovery aimed at attempting to establish that IST violated any provision of the False Claims Act other than the anti-retaliation provision."  While this action was stayed pending mediation, a district judge issued a decision squarely on point, which rejects IST's circular and meritless objection.   In *Dilback v. General Electric Company*, 2008 WL 4372901 (W.D. Ky. Sept. 22, 2008), the plaintiff in an FCA retaliation action moved to compel the production of documents concerning the validity or merits of his disclosures concerning alleged FCA violations.  General Electric refused to produce the documents on the ground that proof of the underlying fraud or violations of the FCA is irrelevant to the FCA retaliation claim.  Noting that "a request for discovery should be considered to be seeking relevant information if there is any possibility that the information sought may be relevant to the claim or defense of any party in the action,"  and that "relevance for the purpose of Rule 26 is broadly construed," *Dilback*, 2008 WL 4372901 at *4**,** Judge McKinley ordered production of documents concerning plaintiff's underlying FCA allegations because there is a possibility that the information sought may be relevant to General Electric's motive for terminating the plaintiff's employment:  "If Plaintiff can show that the documents he was attempting to retrieve reveal the existence of false claims on the part of the Defendant, then such evidence may be probative of

the Defendant's motivation." *Id.*[1]  In the instant action, the validity of Glynn's disclosures and investigatory activities are highly probative of IST's motive.

IST has generated tens of millions of dollars of revenue from its work developing and supplying counter-IED devices to SOCOM, and when Glynn blew the whistle both to IST senior management and to the Department of Defense Office of Inspector General ("DOD OIG"), IST stood to generate substantial revenue from additional contracts with SOCOM.  Moreover, at the time Glynn blew the whistle, IST's senior officers stood to gain a substantial payout from EDO's acquisition of IST.  *See* Fourth Amended Compl. at ¶¶ 64-79, 149-85.  Glynn's protected activities are relevant to the motives of the decision-makers in that they had an obvious motive to retaliate against an employee whose disclosures could put their substantial personal financial gains at risk.

The documents requested in Supplemental Requests Nos. 2 and 4 are also highly relevant to Glynn's protected activities.  In order to establish that he engaged in protected conduct under the anti-retaliation provision of the FCA, Glynn must show that the conduct about which he complained "reasonably could lead to a viable FCA action, ... or when … [qui tam] litigation is a 'reasonable possibility.'" *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 866-68 (4th Cir. 1999).  While Glynn need not demonstrate that his disclosures led to a *qui tam* suit or that he discovered all aspects of the fraudulent scheme that would lead to a complete qui tam

---

[1] Judge McKinley was not persuaded by plaintiff's assertion that plaintiff required the requested documents in order to prove that he was investigating a viable FCA action, but for a reason that does apply in the instant action. General Electric acknowledged that the plaintiff investigated and filed a "viable" qui tam claim and therefore the plaintiff did not need to prove the viability of his disclosures of fraud.  In contrast, the defendants in the instant action have declined to stipulate as to the validity of Glynn's disclosures.

case, *Eberhardt,* 167 F.3d at 866-67, he must show that his investigation "may well further" a potential *qui tam* action. *See Yesudian v. Howard Univ.*, 153 F.3d 731, 741 (D.C. Cir. 1998).

The requested documents would enable Glynn to demonstrate that his investigatory activities and disclosures to senior IST management could have led to or furthered a *qui tam* action. Communications between among or involving IST and DOD regarding the MMBJ (Request No. 2) are relevant in that such communications would show that IST intentionally defrauded the government regarding the performance capabilities of the MMBJ. Documents submitted to the DOD IG or CIC regarding the investigation of Glynn's concerns (Request No. 4) are relevant in that they would corroborate the reasonableness of Glynn's concerns.

Moreover, IST's representations to this Court render the requested documents relevant. In its motion to dismiss Glynn's FCA retaliation claim, IST asserted that Glynn's alleged disclosures do not implicate a viable FCA action. *See, e.g.*, Motion to Dismiss at 19 ("Nowhere does his Amended Complaint allege facts establishing that any *actual knowingly false or fraudulent claims* were made."). In order to rebut this argument in an opposition to IST's motion for summary judgment, Glynn requires access to documents that will substantiate the validity of his disclosures to IST management and DOD about IST's actual or potential FCA violations.

### IV. All Models of the MMBJ Designed Prior to Glynn's Termination Are Relevant In the Instant Action.

IST also objects to Supplemental Document Requests Nos. 5 and 6 on the grounds that discovery concerning any models of the MMBJ other than the MMBJ-1A are not relevant in the instant action. IST's objection is meritless given that "'the present standard – 'relevant to the claim or defense of any party' – is still a very broad one.'" *United Oil Co. v. Parts Assocs., Inc.*,

227 F.R.D. 404, 409 (D. Md. 2005) (citing 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2008 (Supp. 2004).

 IST contends that the only relevant model of the MMBJ jammers in this action is the MMBJ-1A. The complaint in this action, however, specifically alleges fraud on the government with respect to the MMBJ-1A-ECP. *See* Fourth Amended Complaint at ¶¶ 53-57, 101-107. In particular, Glynn raised concerns about removing the MBTNS module from the MMBJ-1A-ECP, including the risk that the MMBJ-1A-ECP would not be able to counter as wide a range of improvised explosive device threats without the MBTNS module. Glynn's reasonable belief that the MMBJ-1A-ECP would not be as effective was based on his knowledge of other models and components of the MMBJ. Documents regarding other models of the MMBJ are necessarily relevant because they will demonstrate the different capabilities among the models of the MMBJ.

 In addition, documents concerning other models of the MMBJ will demonstrate the validity of Glynn's concern that IST was knowingly supplying defective jammers to the United States military and will establish the following: (1) IST employees participated in unauthorized modifications to MMBJ 2.1 systems, modifications which could not be made after the Spiral 2.1 test program was performed to qualify the system; (2) IST violated DOD Directive 20019E; IST failed to inform SOCOM of the consequences of removing the MBTNS module from the MMBJ. Glynn was critical about IST's managements decision to remove this capability (MBTNS Module) because the new capability had not been fully tested against IED threats. Glynn's also needs these documents to prove that his email about this subject to Captain Kavanaugh was true.

 Glynn seeks a copy of IST's certifications to the government concerning its compliance with various contractual duties under contracts for the development and production of MMBJ

jammers will also help Glynn demonstrate that his disclosures implicated fraud on the government, as well as IST's motive to terminate Glynn as discussed in section III *supra.*

### V. IST Must Specify Which "Objectionable" Documents It Has Not Produced

In response to Glynn's Supplemental Document Request No. 1, IST's states that "it has previously produced all responsive, *non-objectionable*, non-privileged documents in its possession or control." Yet IST fails to indicate which "objectionable" documents it has not produced. IST is not entitled to produce only the responsive documents that it believes will support its position and withhold the documents that will enable Glynn to prove his claims. IST should produce the responsive documents, or at a minimum, inform Glynn in a meet and confer which documents are being withheld and give Glynn an opportunity to compel production of relevant, non-privileged documents.

### VI. IST Should Be Compelled to Produce a Privilege Log.

IST objects to Glynn's Supplemental Document Requests to the extent to which they seek information protected by privilege and further indicates that it has produced "non-privileged" documents, yet IST fails to provide a privilege log for any and all privileged documents. IST should be compelled to provide a privilege log for all documents it withholds from disclosure based on privilege.

### Conclusion

Glynn respectfully requests that this Court compel IST to provide more sufficient and complete responses to Glynn's Interrogatory No. 25 and Supplemental Document Requests Nos. 1-6.

Respectfully Submitted,


/s/ Jason Zuckerman
R. Scott Oswald, # 25391
Adam Augustine Carter, # 15481
Jason Zuckerman, # 17190
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2810
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
acarter@employmentlawgroup.net
jzuckerman@employmentlawgroup.net

Edward C. Bacon, # 01256
R. Brent Fuller, # 27702
BACON, THORNTON & PALMER, LLP
6411 Ivy Lane, Suite 706
Greenbelt, Maryland 20770
(301) 345-7001
(301) 345-7075 (facsimile)
ebacon@lawbtp.com
rbfuller@lawbtp.com

*Counsel for Plaintiff and Counter-Claim Defendant Dennis Glynn and Cross-Claim Defendant Saltwhistle Technology, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was served electronically this 17th day of September, 2009, upon:

William Sullivan, Esq.
Ryan Spiegel, Esq.
Sarah Hall, Esq.
Winston & Strawn LLP
1700 K Street, N.W.
Washington, DC 20006
*Counsel for Defendant and Counter-Claimant/Cross-Claimant*

Gordon MacDonald, Esq.
Nixon Peabody LLP
900 Elm Street
Manchester, NH 03101
(603) 628-4074
(603) 628-4040 (facsimile)
*Counsel for Foster-Miller, Inc.*

          ____/s/_____
          Jason M. Zuckerman