# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DENNIS P. GLYNN,          *
          *
         *Plaintiff*         *
          *
        v.            *     Civil Case No. JFM-07-1660
          *
IMPACT SCIENCE &     *
TECHNOLOGY, INC.      *
          *
       *Defendant.*     *
          *
        *****

## MEMORANDUM

Plaintiff Dennis Glynn ("Glynn") brings several claims against his former employer, Impact Science and Technology, Inc., ("IST" or "Defendant") alleging various categories of retaliation and wrongful discharge. Now pending before me is Defendant's motion for partial summary judgment as to Glynn's third cause of action, a wrongful discharge claim brought under New Hampshire common law. For the following reasons, Defendant's motion for partial summary judgment is granted.

## I.    FACTS

The following facts are uncontroverted or set forth in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Glynn was employed by IST from February 2004 to December 14, 2006. (Glynn Dep. at 48, 68.) Upon the commencement of this employment, Glynn and IST executed a contract ("Employment Agreement") setting forth the terms of his employment. In addition to setting Glynn's salary and describing his responsibilities and duties, the Employment Agreement states that both Glynn and IST "warrant that the employment relationship between them is 'at will.'" (Employment

Agreement ¶ 1.)  Despite this reference to Glynn as an "at will" employee, however, the contract also specifies a three-year employment term that "commenced on the date hereof [March 30, 2004] and shall continue until March 30, 2007 (the 'Term')."  (*Id.* ¶ 2.)  Moreover, the contract further provides that "[i]f the Employer terminates the Employee without 'cause,' the Employee shall be paid at the time of his termination, by the Employer, the balance of all Annual Payments not paid him, and the Base Compensation for the remainder of the Term."  (*Id.* ¶ 9(b).)

On December 14, 2006, Glynn was terminated without cause.[1]  Consistent with the provisions of the Employment Agreement, IST paid Glynn all of the compensation due to him for the remainder of the three-year term, a total of $83,198.50.  (Def.'s Ex. E, December 2006 Payroll Register.)  Nonetheless, on June 21, 2007, Glynn filed suit against IST asserting various claims of retaliation and wrongful discharge.  Glynn subsequently amended his complaint several times, and a Fourth Amended Complaint, the operative pleading in this case, was filed on May 23, 2008.  Count three of this amended complaint asserts a wrongful discharge claim brought under New Hampshire common law as set forth in the case of *Monge v. Beebe Rubber Co.*, 316 A.2d 549 (N.H. 1974) (the "*Monge* claim").  (Fourth Am. Compl. ¶¶ 216-27.)  Defendant now moves for partial summary judgment on the *Monge* claim, and for the reasons that follow, I will grant Defendant's motion.

II.    STANDARD OF REVIEW

A motion for summary judgment should be granted only if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

---

[1] IST asserts that since the date of Glynn's termination, it has "learned of Glynn's severe misconduct that would have rendered him subject to termination for cause."  (Def.'s Mem. at 5 n.3.)  Consequently, IST states that it will "seek recoupment of the monies wrongfully paid to Glynn under the Employment Agreement" in a "subsequent motion for summary judgment."  (*Id.* at 9 n.6.)

56(a).  A material fact is one that "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*  "The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of its pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003).

III.    <u>ANALYSIS</u>

Under New Hampshire law, "a termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract."  *Monge v. Beebe Rubber Co.*, 316 A.2d 549, 551 (N.H. 1974).  It is well-established, however, that the wrongful termination claim recognized by *Monge* is not available to all employees.  New Hampshire law states that "employees fall into two classes: contract employees and at-will employees," *Censullo v. Brenka Video, Inc.*, 989 F.2d 40, 42 (1st Cir. 1993), and an employee's status as a contract or at-will employee "dictates which legal remedies are available" upon termination or breach of an employment contract.  *Parker v. MVM, Inc.*, No. SM-05-380, 2007 U.S. Dist. LEXIS 37426, at *6-7 (D.N.H. May 22, 2007).  "Contract employees are limited in their remedies for breach by the terms of the contract," and "at-will employees are limited in their remedies to claims for wrongful termination."  *Censullo*, 989 F.2d at 42.  It is therefore clear that a *Monge* claim for wrongful termination is "a cause of action available only to employees at will."  *Jordan v. Verizon New England, Inc.*, SM-05-146, 2005 U.S. Dist. LEXIS 13238, at *10 n.2 (D.N.H. July 5, 2005); *see also Melvin v. NextEra Energy Seabrook, LLC*, JD-

09-249, 2010 U.S. Dist. LEXIS 896, at *4 (D.N.H. Jan. 6, 2010) ("[T]he claim of wrongful termination exists as a judicially crafted exception to the common law doctrine of employment at will.").

The central question raised by IST's motion for partial summary judgment is whether Glynn was an at-will employee, and therefore able to assert a *Monge* claim for wrongful termination, or alternatively a contract employee, and therefore limited to the remedies provided by his employment contract. Although Glynn's employment was governed by the terms of a written contract, this fact alone does not automatically make him a "contract employee." Similarly, the mere fact that the term "at will" is used at one point in the contract does not conclusively establish that Glynn was an at-will employee. Rather, the New Hampshire Supreme Court has held that in interpreting a contract, courts must "consider the situation of the parties at the time of the agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole." *Butler v. Walker Power, Inc.*, 629 A.2d 91, 93 (N.H. 1993) (internal quotation omitted).

IST argues that Glynn cannot assert a *Monge* claim for wrongful termination because he was a contract employee. In support of this position, IST points out that Glynn was hired for a specific three-year period of time (Employment Agreement ¶ 2), that Glynn's contract expressly provides a remedy for early termination, (*id.* ¶ 9), and that pursuant to this provision, upon his termination Glynn was paid all of the compensation he was slated to receive during his three-year term of employment, (Def's Ex. E). Glynn responds that because his employment agreement contained a clause referring to him as an at-will employee, (Employment Agreement ¶ 1), and because he could be fired without cause, (*id.* ¶ 9(b)), he was an at-will employee entitled to pursue a claim for wrongful termination under New Hampshire common law.

Under New Hampshire law, "the critical aspect of the relationship between employer and employee that distinguishes at-will employment from [contract] employment . . . is the establishment (or absence) of a definite term of employment." *Parker*, 2007 U.S. Dist. LEXIS 37426, at *10; *see also Nat'l Empl. Serv. Corp. v. Olsten Staffing Serv.*, 761 A.2d 401, 406 (N.H. 2000) ("Because the contract was silent as to the duration of employment, the contract created an at-will employment relationship."); *Sheeler v. Select Energy & NEChoice LLC*, JD-03-59, 2003 U.S. Dist. LEXIS 12993, at *24 (D.N.H. July 28, 2003) (contract employment characterized by an employer's "obligation to employ [an employee] for a certain term or not to discharge him absent certain conditions"). In this case, there is no dispute that Glynn's contract provided that his employment "shall continue until March 30, 2007," a period of three years from the contract date. (Employment Agreement ¶ 2.) This is exactly the type of "definite term of employment" that New Hampshire law identifies as "the critical aspect" of the contract employee inquiry, *see Parker*, 2007 U.S. Dist. LEXIS 37426 at *10, and thus constitutes strong evidence that Glynn was a contract employee.

Glynn argues, however, that the language of the Employment Agreement is "sufficiently indefinite" to render his employment at-will because the contract states he may be fired at any time without cause. Glynn contends that a provision authorizing this type of "arbitrary termination" robs the contract's three-year durational term of any meaning and therefore undermines the suggestion that he was a contract employee by virtue of a "definite term of employment." (Pl.'s Opp'n at 8-11.) For support, Glynn cites *Peterson v. APV Crepaco, Inc.*, SD-93-545, 1994 WL 406943 (D.N.H. Aug. 1, 1994), a case in which the plaintiff was held to be an at-will employee under the following contractual language: "This Agreement shall be in effect for one (1) year from the date shown in the opening paragraph of this Agreement. It shall

automatically be renewed from year to year unless terminated by either party in writing. Either party may for any reason terminate this Agreement." *Id.* at *1. Despite the initial mention of a one-year period of employment, the *Peterson* court held that the rest of the contractual language, including the provision for automatic renewal of the contract for an undetermined period, created an indefinite term of employment. *Id.* The instant case is easily distinguishable, however, as Glynn's contract—unlike the agreement in *Peterson*—includes no automatic renewal provision and instead contemplates a definite, three-year term of employment. (*See* Employment Agreement ¶ 2 ["Upon the expiration of the Term, this Agreement shall terminate . . . ."].)

Moreover, while the Employment Agreement may contemplate termination without cause, it also makes clear that such an occurrence would result in a penalty for IST and a guaranteed remedy for Glynn. Specifically, Glynn's contract provides that "[i]f the Employer terminates the Employee without 'cause,' the Employee shall be paid at the time of his termination, by the Employer, the balance of all Annual Payments not paid him, and the Base Compensation for the remainder of the Term."[2] (Employment Agreement ¶ 9(b).) This provision is fundamentally at odds with concept of at-will employment, which enables an employer to terminate an employee without cause *and without penalty*. Additionally, given the rule that "at-will employees are limited in their remedies to claims for wrongful termination," *Censullo*, 989 F.2d at 42, the agreement's provisoin for a contractual remedy serves as further evidence that both parties intended for Glynn to be treated as a contract employee. In light of the New Hampshire Supreme Court's direction that the interpretation of a contract is to be guided by "the object that was intended thereby, together with all the provisions of the agreement taken as a whole," there is little doubt that Glynn is rightfully considered a contract employee.

---

[2] As mentioned above, IST ultimately paid Glynn more than $83,000 upon his termination in keeping with this obligation.

As a fallback position, Glynn argues that even if he is a contract employee, he is still able to pursue a common-law *Monge* claim for wrongful termination. (Pl's Opp'n at 12-15.) Glynn points out that some other states "have extended the wrongful termination in violation of public policy claim to employees covered by contract," and he argues that similarly extending New Hampshire law would further "the intent behind the public policy tort." (*Id.* at 12-13.) New Hampshire courts, however, have repeatedly and decisively rejected this argument. *See, e.g.*, *Censullo*, 989 F.2d at 42 ("Contract employees are limited in their remedies for breach by the terms of the contract."); *Jordan*, 2005 U.S. Dist. LEXIS 13238, at *10 n.2 (noting that wrongful termination is "a cause of action available only to employees at will"). I will not contradict such well-established precedent, and I reaffirm that New Hampshire's wrongful termination claim is available only to at-will employees. Because Glynn was a contract employee, IST is entitled to judgment as a matter of law on Glynn's wrongful termination claim. *See* Fed. R. Civ. P. 56(a).

For the foregoing reasons, NVR's motion for summary judgment will be granted. A separate order is being entered herewith.


Date: January 25, 2011                   _____/s/_____
                                         J. Frederick Motz
                                         United States District Judge